**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| **RENEGADE ACUPUNCTURIST MEDIA, LLC,** | ) ) ) | |
| | ) | **Case No. _____** |
| Plaintiff, | ) ) | |
| v. | ) ) | **VERIFIED COMPLAINT** |
| | ) | (Preliminary Injunction Requested) |
| **KIMBERLY THOMPSON,** | ) ) | |
| Defendant. | ) | |

Plaintiff Renegade Acupuncturist Media, LLC ("Renegade" or "Plaintiff") brings this action for preliminary and permanent injunctive relief, monetary damages, and other relief against its former client Kimberly Thompson ("Defendant") and alleges as follows:

## PARTIES

1.      Renegade is a limited liability company formed under the laws of the State of Wyoming, having a principal place of business at 1101 Marsh Pointe Place, North Myrtle Beach, South Carolina 29582.

2.      Defendant, on information and belief, is a citizen and resident of Meridian, Idaho. On information and belief, Defendant resides and may be found at 2218 West Bellagio Drive, Meridian, Idaho 83646.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332 because there is complete diversity between Renegade and Defendant, and Renegade has been and will continue to be injured in an amount exceeding $75,000, to be proved at trial.

4.      This Court has personal jurisdiction over Defendant because this action arises out

of Defendant's breach of the Seminar Participation Agreement (the "SP Agreement") and Advanced Mentoring Program Agreement (the "AMP Agreement") (collectively, the "Agreements"). A true and correct copy of the SP Agreement executed by Defendant is attached hereto as Exhibit A. A true and correct copy of the AMP Agreement executed by Defendant is attached hereto as Exhibit B. Defendant agreed in the SP Agreement, *see* Exhibit A, ¶ 16(a), and the AMP Agreement, *see* Exhibit B, ¶ 17(a), that any claims seeking injunctive or equitable relief may be brought in Horry County, South Carolina, and any controversy or claim arising out of or relating to the Agreements must be governed by South Carolina law.[1]

5.    Additionally, this Court has personal jurisdiction over Defendant consistent with the principles underlying the U.S. Constitution and S.C. Code Ann. § 36-2-803.

6.    On information and belief, this action arises out of Defendant's specific contacts with the state of South Carolina. Defendant attended Renegade's #SHIFT[TM] program ("#SHIFT") in Myrtle Beach, South Carolina. Defendant also attended events for the Advanced Mentoring Program ("AMP") in North Myrtle Beach, South Carolina, and regularly communicated with Renegade member-managers residing in South Carolina. Evidence of Defendant's specific contacts with the state of South Carolina is attached hereto as Exhibit C.

7.    Venue is proper in this Court under the provisions of 28 U.S.C. §§ 1391(b).

---

[1] Renegade notes that the SMP Agreement ¶ 16(a) and AMP Agreement ¶ 17(a) requires that "any controversy or claim arising out of or relating to this Agreement or a breach thereof, shall be settled by binding arbitration in Myrtle Beach, South Carolina." However, the SMP Agreement and AMP Agreement provide an exception to the arbitration provision and states that arbitration in Myrtle Beach, South Carolina is required "[e]xcept for claims seeking injunctive or other equitable relief." Since Renegade seeks injunctive and equitable relief, this Court has personal jurisdiction over Defendant pursuant to this exception to the arbitration provision.

Defendant agreed to venue in Horry County, South Carolina pursuant to the Agreements.[2] A substantial part of the events giving rise to Renegade's claims occurred in this State and District, and Defendant is subject to personal jurisdiction in this State and District.

## FACTUAL BACKGROUND

8.     On information and belief, Defendant offers holistic health services through the entity doing business as Meridian Family Acupuncture located in Meridian, Idaho. On information and belief, Defendant operates the Meridian Family Acupuncture business at 1879 North Lakes Place, Meridian, Idaho 83646.

9.     On information and belief, Defendant has also offered services in conjunction with AcuGraph since at least as early as August 2021.

10.     Renegade is in the business of offering programming, seminars, and conferences to teach business management consulting, training, and advisory for the holistic health practices, including the acupuncture, chiropractic, alternative medicine, and massage industries.

11.     Specifically, Renegade offers #SHIFT, which is a weekend-long intensive mentoring program that provides to participants Renegade's proprietary and confidential information, including coaching and training tools, techniques, know-how, methods, processes, strategies, and industry expertise developed by Renegade to help strengthen participants' holistic health practices (the "#SHIFT Proprietary Information").

12.     Renegade has expended substantial time, money, and effort in developing the

---

[2] Pursuant to SMP Agreement ¶ 16(a) and AMP Agreement ¶ 17(a), the "venue of any disputes not subject to arbitration . . . shall be in Horry County, South Carolina." Disputes not subject to arbitration are defined as "claims seeking injunctive or other equitable relief." As noted in Footnote 1, Renegade seeks injunctive and equitable relief; therefore, venue is proper in Horry County, South Carolina.

highly valuable, proprietary #SHIFT program and the highly valuable #SHIFT Proprietary Information throughout the United States and worldwide.

13.     The #SHIFT Proprietary Information is not protected by either patent law, trademark law, or any other traditional theory of exclusive rights.

14.     To safeguard Renegade's #SHIFT Proprietary Information and goodwill, which is crucial to Renegade's success, participants are required to sign an SP Agreement and agree to confidentiality provisions substantially similar to the form provided in Exhibit A.

15.     As a condition of Defendant's participation in #SHIFT, Defendant was required to agree to the SP Agreement, including its confidentiality provisions appearing in Paragraph 12.

16.     Defendant executed the SP Agreement prior to beginning #SHIFT on August 28, 2021.

17.     Paragraph 12 of the SP Agreement executed by Defendant and attached hereto as Exhibit A provides:

> Confidentiality.  The Participant agrees to keep confidential all terms of this Agreement and any proprietary Renegade information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques (collectively the "Seminar Information"). The Participant agrees to use the Seminar Information solely for the purposes contemplated by this Agreement.  ***The Participant agrees that all title to and ownership of Seminar Information shall at all times remain with Renegade. The Participant will use the Seminar Information in confidence, will not disclose any Seminar Information to any third parties, but will limit its disclosure to bona fide employees of the Participant on a need to know basis, which employees shall have confidentiality obligations to Member equal to or greater than those set forth in this Agreement.***  The Participant acknowledges that Renegade's remedies at law for any breach of this provision would be inadequate and agrees that in the event of the Participant's breach of any provision of this paragraph, Renegade shall be entitled to appropriate equitable relief, including, but not limited to injunctive relief, which remedy shall be non-exclusive without the need to post any bond.  The provisions of this section shall be subject to any limited disclosure of techniques or treatments in the normal course of treatment related to Participant's practice.

Exhibit A, ¶ 12 (emphasis added).

18.    By signing the SP Agreement, Defendant expressly agreed to "use the Seminar Information in confidence and not disclose any Program Information to any third parties." *Id.*

19.    Seminar Information is defined as "all terms of this Agreement and any proprietary Renegade information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques." *Id.*

20.    Defendant agreed that any breach of Paragraph 12 would entitle Renegade to obtain appropriate equitable relief, including, but not limited to injunctive relief, in addition to all other rights and remedies available to Renegade. *Id.* ¶ 12.

21.    Defendant permitted the SP Agreement to terminate on May 29, 2022.

22.    However, Defendant agreed that the confidentiality and non-use obligations appearing in Paragraph 12 of the SP Agreement survive the termination of the SP Agreement. *Id.* ¶ 16(l).

23.    Pursuant to Paragraph 8 of the SP Agreement, Defendant was also required to disclose "any associations, affiliations of Participant, personal or professional, that could be viewed as competitive entities, and/or may present a conflict for Participant . . . ." *Id.* ¶ 8; <u>Exhibit A</u> at 4.

24.    Defendant listed AcuGraph as a "competitive entit[y] and/or [entity that] may present a conflict." *Id.* ¶ 8; <u>Exhibit A</u> at 4.

25.    Defendant agreed that the "[SP] Agreement has been entered into and shall be construed and governed in accordance with the laws of the State of South Carolina." <u>Exhibit A</u> ¶ 16(a).

26.    As an additional condition of Defendant's participation in #SHIFT, Defendant was required to complete a Pre-Seminar Questionnaire to safeguard Renegade's #SHIFT Proprietary

Information and goodwill, which is crucial to Renegade's success.

27.    The Pre-Seminar Questionnaire provides Renegade with a better understanding of the #SHIFT participant, their clinic and background, allowing Renegade to make any adjustments to better tailor the curriculum to the #SHIFT attendees.

28.    The Pre-Seminar Questionnaire requires #SHIFT participants to confirm that the participant "understand[s] [they] will be required to sign a non-disclosure that [they] *may not teach / mentor / coach or otherwise disclose this proprietary material* [they] learn this weekend to others."

29.    Renegade also offers AMP, which is a nine (9) month mentoring program that provides Renegade's proprietary and confidential information to participants, including coaching and training tools, techniques, know-how, methods, processes, strategies, and industry expertise developed by Renegade to help strengthen attendees' holistic health practices (the "AMP Proprietary Information").

30.    Renegade offers the opportunity to certain clients to continue their participation in AMP for an additional twelve (12)-month term.

31.    In particular, participants in AMP receive AMP Proprietary Information related to mentorship and coaching regarding the operation of a successful holistic health practices business; thorough analysis of participants' practices; advice regarding marketing strategies; and other information, techniques, know-how, methods, processes, and industry expertise developed by Renegade aimed at assisting participants with strengthening their holistic health practice for long-term success as part of AMP.

32.    Renegade has expended substantial time, money, and effort in developing the highly valuable, proprietary AMP and the highly valuable AMP Proprietary Information

throughout the United States and worldwide.

33.    The AMP Proprietary Information is not protected by either patent law, trademark law, or any other traditional theory of exclusive rights.

34.    To safeguard Renegade's AMP Proprietary Information and goodwill, which is crucial to Renegade's success, participants are required to sign an AMP Agreement and agree to confidentiality provisions substantially similar to the form provided in Exhibit B.

35.    As a condition of Defendant's participation in AMP, Defendant was required to agree to the AMP Agreement, including its confidentiality provisions appearing in Paragraph 12.

36.    Defendant executed the AMP Agreement on or about August 29, 2021.

37.    Paragraph 13 of the AMP Agreement executed by Defendant and attached hereto as Exhibit B provides:

> Confidentiality.   The Participant agrees to keep confidential all terms of this Agreement and any proprietary Renegade information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques (collectively the "Program Information"). The Participant agrees to use the Program Information solely for the purposes contemplated by this Agreement.   The Participant agrees that all title to and ownership of Program Information shall at all times remain with Renegade. ***The Participant will use the Program Information in confidence, will not disclose any Program Information to any third parties, but will limit its disclosure to bona fide employees of the Participant on a need to know basis, which employees shall have confidentiality obligations to Member equal to or greater than those set forth in this Agreement.*** The Participant acknowledges that Renegade's remedies at law for any breach of this provision would be inadequate and agrees that in the event of the Participant's breach of any provision of this paragraph, Renegade shall be entitled to appropriate equitable relief, including, but not limited to injunctive relief, which remedy shall be non-exclusive without the need to post any bond.  The provisions of this section shall be subject to any limited disclosure of techniques or treatments in the normal course of treatment related to Participant's practice.

Exhibit B, ¶ 13 (emphasis added).

38.    By signing the AMP Agreement, Defendant expressly agreed to "use the Program Information in confidence and not disclose any Program Information to any third parties." *Id.*

39.    Program Information is defined as "all terms of this Agreement and any proprietary Renegade information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques." *Id.*

40.    Additionally, Defendant agreed that any breach of Paragraph 13 would entitle Renegade to obtain appropriate equitable relief, including, but not limited to injunctive relief, in addition to all other rights and remedies available to Renegade. *Id.* ¶ 13.

41.    Defendant was invited to renew the AMP Agreement on May 29, 2022, but Defendant declined to renew the AMP Agreement.

42.    However, Defendant agreed that the confidentiality and non-use obligations appearing in Paragraph 13 of the AMP Agreement survive the termination of the AMP Agreement.

43.    Pursuant to Paragraph 9 of the AMP Agreement, Defendant was also required to disclose "any associations, affiliations of Participant, personal or professional, that could be viewed as competitive entities, and/or may present a conflict for Participant . . . ." *Id.* ¶ 9; <u>Exhibit B</u> at 5.

44.    Defendant listed Miridia, the creator of AcuGraph, as a "competitive entit[y] and/or [entity that] may present a conflict." *Id.* ¶ 9; <u>Exhibit B</u> at 5.

45.    Defendant agreed that the "[AMP] Agreement has been entered into and shall be construed and governed in accordance with the laws of the State of South Carolina." *Id.* ¶ 17(a).

46.    Defendant attended and participated in #SHIFT in Myrtle Beach, South Carolina, on August 28–29, 2021.

47.    Defendant was given access to Renegade's #SHIFT Proprietary Information during Defendant's participation in #SHIFT. Defendant received an extensive and detailed education, as well as an in-depth working knowledge of #SHIFT Proprietary Information. The #SHIFT

Proprietary Information, taken individually and in combination, represents one of Renegade's leading strategic advantages over its competitors and provides a critically important differentiator in the marketplace.

48.    Defendant participated in AMP from August 29, 2021 to May 29, 2022. Defendant attended and participated in AMP events in Myrtle Beach and North Myrtle Beach, South Carolina, as well as AMP retreats in Ocean Isle Beach, North Carolina and remote video conferences. *See* Exhibit C.

49.    Defendant was given access to Renegade's AMP Proprietary Information during of Defendant's participation in AMP. Defendant received extensive and detailed education, and an in-depth working knowledge of AMP Proprietary Information. The AMP Proprietary Information, taken individually and in combination, represents one of Renegade's leading strategic advantages over its competitors and provides a critically important differentiator in the marketplace.

50.    As a testament to the techniques, methods, processes, etc. provided to participants as part of the #SHIFT Proprietary Information and the AMP Proprietary Information (collectively, the "Renegade Proprietary Information"), Defendant offered public praise on social media of #SHIFT, AMP, and certain of Renegade's member-managers following her participation in #SHIFT and AMP. Evidence of these posts is attached hereto as Exhibit D. Defendant's posts recognize the increased monthly revenue of her business as the result of her participation in #SHIFT and AMP. The posts also state how happy she is that she went to #SHIFT and AMP, specifically noting: "I did it wrong for 10 years DAMMIT . . . . I'm rectifying that problem now." *See id.* (emphasis in original).

51.    On July 7, 2022, Defendant posted on the Meridian Family Acupuncture Facebook page, attached hereto as Exhibit E, that "she will be beginning a new teaching program so that she

and her colleagues can share what they have learned with other doctors and practitioners . . . . We are rapidly growing her dream of becoming a 'teaching clinic' where she can offer hands-on mentorship. . . . She studies with the BEST, to become the BEST, so that she can offer the BEST care." (emphasis in original). The photograph included with the Facebook post features Defendant and three other former Renegade clients.

52.    On July 26, 2022, Renegade sent correspondence to Defendant reminding her of her continuing confidentiality and nondisclosure obligations under the SP Agreement and AMP Agreement. Renegade explicitly noted for Defendant that she "may not share, teach, or otherwise disclose any of Renegade's proprietary information with or to any third party, including but not limited to any written materials or techniques provided or taught during [#SHIFT] or [AMP]." A true and accurate copy of Renegade's July 26, 2022, correspondence is attached hereto as Exhibit F.

53.    Renegade's July 26, 2022 correspondence was delivered on August 1, 2022, as shown in the USPS proof of delivery attached hereto as Exhibit G.

54.    Renegade has not received a response to its July 26, 2022 correspondence.

55.    On August 18, 2022, Defendant posted on the Meridian Family Acupuncture Facebook page, attached hereto as Exhibit H, that "Dr. Kimberly is always up to 'something.' . . . Like we said….Dr. Kimberly is always up to SOMETHING!" (emphasis in original).

56.    On or about August 20, 2022, Renegade discovered that Defendant had started offering an AcuGraph Accelerator Program with AcuGraph Acupuncture Technology. As shown in Exhibit I attached hereto, the AcuGraph Accelerator Program will be offered by Defendant to teach other holistic health service providers how to "be a better acupuncturist," "build a bigger practice," "transform brand new patients into wellness patients," teach "the skillset to build a

sustainable six-figure income," and "learn to think outside of the box." (emphasis omitted).

57.     Defendant describes that "[she] almost quit using AcuGraph," explaining:

> Last year, I went down a new path [and] started a ***mentorship program and learned from some of the best doctors in the nation***. While on this journey I met some amazing doctors . . . but, they weren't using AcuGraph. ***So I thought I'd try my hand at what they were doing and see how it went. I wanted to be like them, because I thought they were successful.*** Long story short, after being asked time and time again by my peers in the program to teach them about AcuGraph, I realized I had something these other doctors wanted and needed. So . . .
>
> •     I went back to my clinic and reevaluated how I was assessing patients
> •     I fine-tuned my AcuGraph skillset and took it to a whole new level
> •     My practice tripled
> •     I'm more successful than I have ever been
> •     AcuGraph is the center of my clinic.

*See* <u>Exhibit I</u> (third alteration in original) (emphasis added).

58.     Defendant will begin offering the AcuGraph Accelerator Program on September 12, 2022, and the program will last six-weeks, ending on October 17, 2022. *See id.*

59.     Defendant will offer the AcuGraph Accelerator Program to twelve (12) practitioners at a cost of $3,995.00 per practitioner. *See id.*

60.     In addition to the AcuGraph Accelerator Program, Defendant will offer a Three-Day Intensive at her clinic located in Meridian, Idaho, on November 4–6, 2022. *See id.*

61.     Defendant will offer a bundle consisting of the AcuGraph Accelerator Program and the Three-Day Intensive to six (6) practitioners at a cost of $4,995.00 per participant. *See id.*

62.     Defendant's own description of the AcuGraph Accelerator Program and Three-Day Intensive (the "Thompson Program") reflects that the Thompson Program will include the Renegade Proprietary Information the Defendant learned at #SHIFT and AMP.

63.     Following Renegade's discovery of the Thompson Program, Renegade's counsel

sent additional correspondence to Defendant on September 1, 2022, again reminding Defendant of her non-disclosure and confidentiality obligations pursuant to the Agreements and requesting a response by Tuesday, September 6, 2022 by 5 P.M. EST. A true and correct copy of this correspondence is attached hereto as Exhibit J.

64.     Renegade received a response from Defendant on Tuesday, September 6, 2022, at 4:59:51 P.M. EST stating that she received the communications and "will provide an appropriate response in due time." The correspondence did not address any issues or provide any assurances to Renegade. A true and correct copy of this correspondence is attached hereto as Exhibit K.

65.     On September 7, 2022, Renegade received correspondence from Defendant's counsel stating that Defendant "has not breached any agreement," Defendant's counsel failed to provide any evidence or reasonable assurances that the Thompson Program does not include the Renegade Proprietary Information. A true and correct copy of this correspondence is attached hereto as Exhibit L.

66.     Defendant's own description of the Thompson Program reveals that the Thompson Program will involve and include the Renegade Proprietary Information disclosed to Defendant at #SHIFT and AMP. *See* Exhibit I.

67.     Defendant herself described AcuGraph as a competitor in the Agreements. *See* Exhibit A at 4; Exhibit B at 5.

68.     It is not possible that Defendant can offer the Thompson Program without utilizing and misappropriating the Renegade Proprietary Information in violation of the non-disclosure provisions and confidentiality obligations of the Agreements.

69.     Defendant obtained name recognition and credibility while participating in #SHIFT and AMP with holistic health service providers, and Defendant will use Renegade's goodwill to

unfairly benefit Defendant.

70.    Defendant's breach of the Agreements, as described above, and direct knowledge of the Renegade Proprietary Information represent both actual and threatened misappropriation of the Renegade Proprietary Information absent immediate injunctive relief from the Court.

71.    As a direct result of Defendant's breaches, Renegade has suffered, and will continue to suffer, irreparable harm in the in the form of actual and threatened misappropriation of the Renegade Proprietary Information, damage to its reputation and goodwill, loss of business opportunities, damage to relationships with clients, and loss of market share.

72.    Renegade is suffering irreparable harm and damage as a result of Defendant's acts in an amount not yet determined.

73.    Defendant's unlawful conduct has irreparably harmed Renegade, and unless enjoined, will continue to harm Renegade through injury and loss to Renegade's business, reputation, and goodwill. Renegade has no adequate remedy at law to redress these injuries.

## <u>COUNT I</u>
## Breach of Contract

74.    Renegade realleges and incorporates herein by reference the foregoing paragraphs.

75.    This is an action for damages and preliminary and permanent injunctive relief against Defendant for her breach of the Agreements.

76.    The Agreements are valid and binding contracts between Renegade and Defendant.

77.    In exchange for agreeing to the confidentiality and non-use obligations contained in the Agreements, Renegade permitted Defendant to participate in #SHIFT and AMP.

78.    During Defendant's participation in #SHIFT and AMP, Defendant gained access to the Renegade Proprietary Information, including its materials, techniques, know-how, processes, and methods, all of which were linked to signing and affirming the restrictive covenants contained

in the Agreements.

79.    The confidentiality and non-use obligations contained in the Agreements are necessary, reasonable, not unduly harsh and oppressive, reasonable from a public policy perspective, supported by adequate consideration, and serve the legitimate business purpose of protecting the Renegade Proprietary Information.

80.    By creating a similar program to #SHIFT and AMP and offering such similar program with a competitor despite the confidentiality provisions of the Agreements, Defendant has breached the confidentiality provisions of the Agreements.

81.    On information and belief, Defendant is using the Renegade Proprietary Information, to which she was exposed during her participation in #SHIFT and AMP to the detriment of Renegade, to the benefit of the Thompson Program, and in direct violation of the Agreements.

82.    As a direct and proximate result of Defendant's breach of the Agreements, Renegade has been harmed and will continue to be harmed as long as Defendant offers the Thompson Program.

83.    As a result of the irreparable injury and harm detailed above, Renegade has no adequate remedy at law.

84.    As a direct and proximate result of Defendant's breaches of the Agreements, Renegade is entitled to injunctive relief to restrain Defendant's further breach of the Agreements, in addition to any other damages allowed by law.

## COUNT II
### Unfair Trade Practices

85.    Renegade realleges and incorporates herein by reference the foregoing paragraphs.

86.    Pursuant to S.C. Code Ann. § 39-5-20 *et seq.*, Defendant's conduct, as set forth

herein, constitutes an unfair method of competition and unfair and deceptive trade acts or practices in the conduct of trade or commerce, which have an adverse impact on the public interest.

87.    Defendant's purpose in utilizing the Renegade Proprietary Information was to afford herself an unfair competitive advantage over Renegade, including permitting her to benefit at the expense of Renegade from the improper misappropriation, use and inevitable use of the Renegade Proprietary Information, interfering with Renegade's business relationship expectancies, and gaining the unfair advantage in obtaining a head start in her operations from not having to experience the same trial and error that Renegade experienced in its development of #SHIFT and AMP.

88.    Upon information and belief, Defendant is using or intends to use the Renegade Proprietary Information in order to provide services that will directly compete with the services offered by Renegade.

89.    Upon information and belief, Defendant knew or should have known of her wrongful acts.

90.    Defendant's conduct and actions have adversely affected the industry for the services at issue, as well as current and potential Renegade clients, and have and will continue to have an impact on the public interest.

91.    Defendant's conduct is a willing and knowing violation of S.C. Code Ann. § 39-5-20 *et seq.* and has and will continue to proximately cause damage to Renegade.

## COUNT III
### Misappropriation

92.    Renegade realleges and incorporates herein by reference the foregoing paragraphs.

93.    Defendant has copied or appropriated confidential and proprietary information belonging to Renegade, which is not protected by either patent law, trademark law, or any other

traditional theory of exclusive rights, and Renegade has been damaged thereby.

94.    Renegade has been, and will continue to be, damaged and irreparably harmed by the unfair and deceptive acts of Defendant, which will continue unless the Court enjoins Defendant.

95.    Renegade is entitled to recover actual damages resulting from Defendant's misappropriation, pre-judgment and post-judgment interest, and exemplary damages.

**COUNT IV**
**Unjust Enrichment**

96.    Renegade realleges and incorporates herein by reference the foregoing paragraphs.

97.    Defendant's improper conduct alleged above, including her misappropriation of and use and/or threatened or inevitable use of the Renegade Proprietary Information, has enabled and will continue to enable Defendant to unfairly compete with Renegade, including permitting Defendant to gain a head start in her operations from not having to experience the same trial and errors that Renegade experienced in developing the Renegade Proprietary Information.

98.    These actions were wrongful and performed in a malicious manner to harm Renegade and unjustly enrich Defendant at Renegade's expense.

99.    As a direct and proximate result of Defendant's improper conduct alleged above, Defendant hasbeen unjustly enriched in an amount to be determined by the trier of fact, and Renegade is entitled to disgorgement of any and all profits, earnings, and commissions attributable to Defendant's wrongful actions.

**REQUEST FOR RELIEF**

WHEREFORE, Renegade respectfully prays that:

(A)    The Court enter a preliminary injunction pursuant to common law, the Agreements, the aforementioned contractual promises of Defendant, and Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendant, directly or indirectly, alone or in association with or on behalf of

any other person or entity, from:

(i)     Possessing, transmitting, disclosing, using, or communicating in any manner whatsoever, either directly or indirectly, the Renegade Proprietary Information; and

(ii)     Violating, either directly or indirectly, the terms of the Agreements with Renegade;

(B)     The Court enter a permanent injunction directly or indirectly, alone or in association with or on behalf of any other person or entity, from:

(i)     Possessing, transmitting, disclosing, using, or communicating in any manner whatsoever, either directly or indirectly, the Renegade Proprietary Information; and

(ii)     Violating, either directly or indirectly, the terms of the Agreements with Renegade.

(C)     The Court enter a judgment against Defendant in the amount of damages as may be proven at trial, including punitive damages;

(D)     The Court enter a declaratory judgment on behalf of Renegade on all its claims;

(E)     The Court treble the compensatory damages awarded with respect to the second claim of relief pursuant to S.C. Code Ann. § 39-5-140;

(F)     The Court award reasonable attorneys' fees and costs pursuant to S.C. Code Ann. § 39-5-140;

(G)     The Court order the return of all documentation of any sort containing proprietary and confidential information of Renegade;

(H)     The Court tax the costs of this action against the Defendant;

(I)     The Court award pre-judgment interest as appropriate;

(J)     That a trial by jury be had on all issues triable; and

(K)    That the Court award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Renegade hereby demands a trial by jury on all issues so triable.

Dated: September 11, 2022

**BURR & FORMAN LLP**

/s/ William Y. Klett, III
William Y. Klett, III, Esq.
Fed. Id. No. 5610
100 Calhoun Street, Suite 400
Charleston, South Carolina 29402
Ph: (843) 973-6805
Fax: (803) 933-1470
Email: wklett@burr.com

*Attorneys for Plaintiff Renegade Acupuncturist Media, LLC*

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **RENEGADE ACUPUNCTURIST MEDIA, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. _____** |
| v. | ) | |
| | ) | |
| **KIMBERLY THOMPSON,** | ) | **VERIFICATION OF TONYA WEBER** |
| | ) | |
| Defendant. | ) | |

Tonya Weber ("Weber"), being first duly sworn, deposes and says that she is a member-manager of Renegade Acupuncturist Media, LLC ("Renegade"); that she has read the foregoing Verified Complaint; and that she believes the facts and allegations of the Verified Complaint to be accurate based on her own either her own personal knowledge, the inquiry of other employees at Renegade, or the review of documentation.

Executed on September ____9____, 2022.

_____
Tonya Weber, Member
Renegade Acupuncturist, LLC

SWORN to and subscribed before me
this ____9th____ day of ___September___, 2021.

_____
Notary Public State of South Carolina
My Commission Expires: __12/9/2024__

Verified Complaint
48929139 v5

20

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| **RENEGADE ACUPUNCTURIST MEDIA, LLC,** | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| **KIMBERLY THOMPSON,** | ) ) ) | **VERIFICATION OF MIN JEON** |
| Defendant. | ) ) | |

Min Jeon ("Jeon"), being first duly sworn, deposes and says that she is a member-manager of Renegade Acupuncturist Media, LLC ("Renegade"); that she has read the foregoing Verified Complaint; and that she believes the facts and allegations of the Verified Complaint to be accurate based on her own either her own personal knowledge, the inquiry of other employees at Renegade, or the review of documentation.

Executed on September ___9___, 2022.

_____
Min Jeon, Member
Renegade Acupuncturist Media, LLC

SWORN to and subscribed before me
this ___9th___ day of ___September___, 2021.

_____
Notary Public State of South Carolina
My Commission Expires: ___12|9|2024___