**IN THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **RENEGADE ACUPUNCTURIST MEDIA, LLC,** | ) | |
| | ) | **Case No. 4:22-cv-03049-JD** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **PLAINTIFF'S RESPONSE IN** |
| **KIMBERLY THOMPSON,** | ) | **OPPOSITION TO DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| **Defendant.** | ) | |

Plaintiff Renegade Acupuncturist Media, LLC ("Renegade") hereby submits its Response to Defendant Kimberly Thompson's ("Defendant") Motion to Dismiss Renegade's Complaint (ECF No. 8, the "Motion") pursuant to Local Rule 7.06 and applicable authorities. For the reasons set forth herein, Renegade respectfully requests the Court to enter an Order denying the Motion.

## NATURE OF THE CASE

Defendant's Motion alleges the claims are "vague and ambiguous" such that Defendant cannot answer the pleading because Renegade *allegedly* bases its Complaint on *purportedly* "unidentified 'proprietary' or 'confidential' information." ECF No. 8 at 1. However, Defendant is well aware of the proprietary and confidential information at issue and her obligations of non-use and non-disclosure related to such information. Therefore, Defendant can properly respond to Renegade's Complaint because it does not fail to state a claim. As a result, Renegade respectfully requests this Court to deny Defendant's Motion to prevent Defendant from further violating her obligations of confidentiality and non-disclosure and from further misappropriation of Renegade's confidential, proprietary, and competitively valuable business information.

## FACTUAL BACKGROUND

Renegade offers seminars and conferences to teach business management consulting,

1

training, and advising for the holistic health practices, including the acupuncture industry. ECF No. 1 ¶ 10. Specifically, Renegade offers the #SHIFT$^{TM}$ program ("#SHIFT"), a weekend-long intensive mentoring program, and the Advanced Mentoring Program ("AMP") a nine (9)-month mentoring program, each providing Renegade's proprietary and confidential system of techniques, know-how, methods, processes, strategies, and industry expertise related to ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ (the "Renegade Proprietary Information").

*Id.* ¶¶ 11, 29; Ex. A, Weber Aff. ¶¶ 3–4. Renegade has spent substantial time, money, and effort in an amount of approximately ████████ to develop the Renegade Proprietary Information and views it as a key strategic advantage in the industry. Weber Aff. ¶ 5; ECF No. 1 ¶¶ 12, 32, 47, 49.

Defendant operates Meridian Family Acupuncture in Meridian, Idaho. ECF No. 1 ¶ 8. To further develop her practice, Defendant participated in #SHIFT in Myrtle Beach, South Carolina on August 28–29, 2021. *Id.* ¶ 46. As consideration for Defendant's participation in #SHIFT and access to the Renegade Proprietary Information, Defendant executed Renegade's Seminar Participation Agreement (the "SP Agreement"), which requires Defendant to keep confidential "any proprietary information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques." *Id.* ¶¶ 15–17; *id.* Ex. A ¶ 12. The SP Agreement also required Defendant to disclose "any associations, affiliations . . . , personal or professional, that could be viewed as competitive entities, and/or may present a conflict . . . ." *Id.*

¶ 23; *id.* Ex. A. In response, Defendant listed AcuGraph, a Renegade competitor, which Thompson used for over ten years (and is now her current employer). *Id.* ¶ 23; *id.* Ex. A ¶ 8.

Prior to Defendant's participation in #SHIFT, Defendant also completed a Pre-Seminar Questionnaire (the "Pre-Seminar Questionnaire") in which Defendant was required to confirm that she ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *Id.* ¶¶ 26–28. In the Pre-Seminar Questionnaire, Defendant also represented the following:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████

*See* Ex. B, Pre-Seminar Questionnaire at 18 (emphasis added). ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████ *See* Weber Aff. ¶ 6.

Renegade permits certain clients to continue participation in AMP following #SHIFT, and Defendant was one such client. ECF No. 1 ¶¶ 30, 48. Defendant participated in AMP from August 29, 2021 to May 29, 2022. *Id.* ¶ 48. As consideration for Defendant's participation in AMP and access to the Renegade Proprietary Information, Defendant entered the Advanced Mentoring Program Agreement (the "AMP Agreement"). *Id.* ¶¶ 34–35. The AMP Agreement required Defendant to keep confidential "any proprietary information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques." *Id.* ¶ 37; *id.* Ex. B ¶ 13. The AMP Agreement also required Defendant to disclose competitive or conflicting entities, and Defendant listed Miridia, the creator of AcuGraph. *Id.* ¶ 43; *id.* Ex. B ¶ 9.

By executing the SP Agreement and AMP Agreement (collectively, the "Agreements"), Defendant expressly agreed that she would only use information received pursuant to #SHIFT and

AMP, respectively, "in confidence" and "[would] not disclose any [] Information to any third parties," including after expiration, except an employee bound by confidentiality obligations at least as strict as those in each respective Agreement. *Id.* ¶¶ 17, 37. Defendant also expressly agreed that any breach of the confidentiality provision in the Agreements entitled Renegade to obtain injunctive relief (in addition to all other rights and remedies available to Renegade). *Id.* ¶¶ 20, 40.

As a result of Defendant's agreement to the confidentiality and non-use obligations in the Agreements, representation in the Pre-Seminar Questionnaire, and participation in #SHIFT and AMP, Defendant was provided with an extensive and detailed education of the Renegade Proprietary Information that assists Renegade's clients with the further development and success of their holistic health services practices. *Id.* ¶¶ 47, 49. The Renegade Proprietary Information represents one of Renegade's leading strategic advantages over its competitors and provides a critically important differentiator in the marketplace. *Id.*; Weber Aff. ¶ 5.

In fact, Defendant highlighted Renegade's leading strategic advantages over competitors when she publicly praised #SHIFT and AMP for assisting her with attaining never-before-seen revenue goals. In a Facebook post on October 29, 2021, Defendant stated:

> October—End of Month—I broke my personal record TWICE!!!! . . . Am I glad that I went to SHIFT in November???? Ummmmm…YES! Am I glad that I signed up for AMP???? Absolutely.

*Id.* Ex. D. In a comment to another Facebook post, Defendant noted that, from 2019–2021 Defendant's revenue grew from $7,464.00 to $37,995.72 in December; $21,773.00 to $121,657.42 in the 4th Quarter; and $84,387.00 to $252,728.18 in yearly revenue. *See id.*

Despite her success, Defendant permitted the Agreements to terminate on May 29, 2022. *Id.* ¶¶ 21, 41. Less than three (3) months after termination, Renegade learned through a post on the Meridian Family Acupuncture Facebook page that Defendant had started developing a "new"

4

teaching program that would permit her and her colleagues to share what they learned from Renegade with other doctors and practitioners. *Id.* ¶¶ 22, 42, 51, 56–57; *see also id.* Exs. E, F, I, J. Defendant pressed forward despite the program's direct violation of the non-disclosure and confidentiality provisions of the Agreements (which survived the termination of the Agreements).

Due to the post, Renegade sent correspondence to Defendant on July 26, 2022, reminding her of her continuing confidentiality and non-disclosure obligations under the Agreements. *Id.* ¶ 52; *id.* Ex. F. Renegade did not receive a response. *Id.* ¶ 54. Renegade continued monitoring Defendant's activity. On August 18, 2022, Defendant posted on her acupuncture clinic's Facebook page: "Dr. Kimberly is always up to 'something.' . . . Like we said . . . Dr. Kimberly is always up to SOMETHING!" *Id.* ¶ 55; *id.* Ex. H. (emphasis in original). Two days later, Renegade discovered that Defendant began offering a signup page for an AcuGraph Accelerator Program with AcuGraph, the very group that Defendant stated she was exiting and stated she would not provide the Renegade Proprietary information. *Id.* ¶ 56; Weber Aff. ¶ 6; Ex. B, Questionnaire at 18.

Identical to the aims of Renegade's #SHIFT and AMP programs, the AcuGraph Accelerator Program intends to teach holistic health service providers how to "be a better acupuncturist," "build a bigger practice," "transform brand new patients into wellness patients," teach "the skillset to build a sustainable six-figure income," and "learn to think outside of the box" based on skills that Defendant "learned from some of the best doctors in the nation." ECF No. 1 ¶¶ 56–57; *id.* Ex. I. In conjunction with the AcuGraph Accelerator Program, Defendant will also offer a Three-Day Intensive at her clinic located in Meridian, Idaho, on November 4–6, 2022, similar to the practical visits offered by Renegade. *Id.* ¶ 60; *id.* Ex. I. The AcuGraph Accelerator Program and Three-Day Intensive are collectively referred to herein as the "Thompson Program."

Because #SHIFT and AMP were virtually identical to the Thompson Program based on

information available to Renegade, Renegade's counsel sent follow-up correspondence to Thompson on September 1, 2022. *Id.* ¶ 63; *id.* Ex. J. Renegade received a response from Defendant on Tuesday, September 6, 2022, mere seconds before its requested response deadline, stating that she "will provide an appropriate response in due time." *Id.* ¶ 64; *id.* Ex. K. The correspondence did not provide any assurances that the Thompson Program did not include Renegade Proprietary Information or that Defendant had not disclosed Renegade Proprietary Information to Renegade's competitor, AcuGraph. *See id.* ¶ 65; *id.* Ex. K. On September 7, 2022, Renegade received a formal reply from Defendant's counsel, but the correspondence also failed to provide any such evidence or reasonable assurances. *Id.* ¶ 65; *id.* Ex. L. The correspondence also ignores that Defendant offers the Thompson Program through AcuGraph, a Renegade competitor. *See id.* Exs. A ¶ 8, B ¶ 9, L.

Due to Defendant's refusal to: (1) fully respond to the issues raised in Renegade's correspondence, (2) provide assurances that Defendant does not intend to breach the Agreements, and (3) offer reasonable evidence that the Thompson Program does not misappropriate the Renegade Proprietary Information, Renegade registered a representative for the Thompson Program. Weber Aff. ¶ 9. Renegade hoped to gather additional evidentiary support of the Thompson Program's violation of Defendant's confidentiality and non-use obligations, but Defendant cancelled this registration. *Id.* ¶¶ 10, 15. Renegade successfully completed a second registration, and a Renegade member's employee participated in the Thompson Program's first session on Monday, September 12. *Id.* ¶¶ 12–13. She reported that the Thompson Program "is a mirror of [Renegade]." *Id.* ¶ 13. ███████████████████████████████

████████████████████████████████████████████████████████████████████

██████████ *Id.* ¶¶ 16–17. Defendant cancelled the registration after Complaint service. *Id.* ¶ 14.

Renegade sent correspondence to Defendant on two (2) separate occasions requesting

further information about the Thompson Program and attempted to participate in the Thompson

Program to confirm there was no breach. However, Defendant has thwarted all such efforts.

Defendant cannot now assert that the Complaint should be dismissed and/or request a more definite

statement after she has refused to provide any information regarding the Thompson Program.

## ARGUMENT

**I.    Defendant understands what confidential and proprietary information is at issue, and Defendant's Motion should be denied.**

Defendant claims that the proprietary and confidential information at issue is

"unidentified," and that Renegade has allegedly failed to state a claim upon which relief may be

granted, thereby requiring dismissal of Renegade's Complaint. ECF No. 8 at 2, 4. However,

Defendant overstates the requirements of a federal notice pleading standard, and her argument

should be rejected. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and

plain statement of the claim showing that the pleader is entitled to relief." "*Twombly* 'do[es] not

require heightened fact pleading of specifics,' and it appears that notice pleading remains the rule."

*Boland v. Consol. Multiple Listing Serv., Inc.*, 868 F. Supp. 2d 506, 512 (D.S.C. 2011) (quoting

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), *aff'd and remanded sub nom. Robertson v.*

*Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278 (4th Cir. 2012). "[A] motion to dismiss for

failure to state a claim should not be granted unless it appears certain that the plaintiff can prove

no set of facts which would support its claim and would entitle it to relief." *LPS Servs., Inc. v.*

*Pivot Parking, LLC*, No. 6:21-CV-00532-JD, 2021 WL 5991057, at *4 (D.S.C. Aug. 23, 2021)

(quoting *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All reasonable

inferences are drawn in a plaintiff's favor. *See, e.g.*, *Edwards v. City of Goldsboro*, 178 F.3d 231,

244 (4th Cir. 1999). Renegade offers a short and plain statement of its entitlement to relief, and

Defendant's Motion should be denied.

Defendant also knows and understands what confidential and proprietary information is at issue, and Renegade has not failed to state a claim. First, the Pre-Seminar Questionnaire required Defendant to agree that she " ███████████████████████████████████████ ███████████████████████████████████ " ECF No. 1 ¶ 28 (emphasis added). Second, the Agreements expressly required Defendant to keep confidential "any proprietary information provided or developed by Renegade, ***including, without limitation, all information relating to written materials and techniques.***" *Id.* ¶¶ 17, 37; *id.* Exs. A ¶ 12, B ¶ 13 (emphasis added).

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Weber Aff. ¶ 6. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

*See id.* ¶ 7; *see also id.* Ex. 1. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████    *Id. ¶ 8.*    ████████████████

████████████████████████████████████████████████████████████████████████████

████████  *Id.* ¶¶ 16–17. Defendant is well aware of the confidential and proprietary information at

issue. Defendant's Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied.

## II.    The Court has subject matter jurisdiction.

Defendant argues that the Court does not have subject matter jurisdiction over this matter.

"When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter

jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Hoblick v. United*

*States*, 526 F. Supp. 3d 130, 133 (D.S.C. 2021) (quoting *Richmond, Fredericksburg & Potomac*

*R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). On the question of whether there is

subject matter jurisdiction, "the court applies the standard applicable to motions for summary

judgment where the nonmoving party must set forth specific facts beyond the pleadings to show

that a genuine issue of material fact exists." *Id.* (quoting *Richmond*, 945 F.2d at 768). "The moving

party should prevail only if the material jurisdictional facts are not in dispute and the moving party

is entitled to prevail as a matter of law." *Id.* (quoting *Richmond*, 945 F.2d at 768).

Federal courts have subject matter jurisdiction in civil actions when there is (1) a federal

question, or (2) the matter involves a controversy between parties of different states and the matter

in controversy exceeds the sum of $75,000 exclusive of interest and costs. 28 U.S.C. § 1331,

1332(a)(1); *see also Hunt v. Warder*, No. CV 6:05-1613-HFF-BHH, 2005 WL 8163228, at *1

(D.S.C. July 12, 2005). This matter involves citizens of different states, and the matter in

controversy exceeds the sum of $75,000 exclusive of interest and costs.

Renegade is a limited liability company formed under the laws of the State of Wyoming,

having a principal place of business at 1101 Marsh Pointe Place, North Myrtle Beach, South

Carolina 29582. *See* ECF No. ¶ 1. Defendant is a citizen and resident of Meridian, Idaho. *Id.* ¶ 2.

With Renegade registered in Wyoming with a principal place of business in South Carolina and

Defendant a citizen of Idaho, the matter does involve citizens of different states. Additionally, the

amount in controversy is greater than $75,000. Renegade has spent substantial time, money, and

effort in an amount of approximately ███████████ to develop the Renegade Proprietary

Information, which equals the value of Renegade's information that has been misappropriated.

Weber Aff. ¶ 5. Additionally, Defendant offered the AcuGraph Accelerator Program to 12

practitioners at $2,995–$3,995 per person and 6 practitioners to participate in the AcuGraph

Accelerator Program and Three-Day Intensive at $4,995–$6,990 per person. *See* ECF No. 1 Ex. I.

Therefore, the lost profits incurred from the Thompson Program are $89,880 if Defendant sold all

available spots at the highest price shown on the Thompson Program website at

www.acugraph.com/acceleratord-program/, or $65,910 if sold at the lowest price shown on the

website. *See id.* Due to the value of the Renegade Proprietary Information to Renegade together

with the lost profits from the Thompson Program, the amount in controversy exceeds $75,000.

Further, these facts show that a genuine issue of material fact exists, and as a result, Defendant's

Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) should be denied.

**III.    Defendant's Motion to require Renegade to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) should be denied.**

Defendant also moves for a more definite statement pursuant to Federal Rule of Civil

Procedure 12(e), stating that the allegations do not provide enough information for Defendant to

prepare a response. As noted in Section I, Defendant agreed to receive Renegade Proprietary

Information. Therefore, Defendant's statement that "Defendant cannot discern whether she ever

received such information, or had knowledge of such subjects or topics prior to any interaction

with Plaintiff such that Plaintiff was not the source" cannot be correct. ECF No. 8 at 2.

Even still, through this statement, the Defendant alleges that there might be independent development of the materials, concepts, and programming offered in the Thompson Program. However, in trade secret cases, courts have shifted the burden of proof to the Defendant when defendant claims independent development. "It is a well-recognized principle that, where a defendant in a trade secret case claims independent development, the burden shifts to the defendant to show that this was in fact the case." *Integrated Cash Management Servs. v. Digital Transactions, Inc.*, 732 F. Supp. 370, 377–78 (S.D.N.Y. 1989), *aff'd*, 920 F.2d 171 (2d Cir. 1990); *see also Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976) ("[D]isclosure of the secret to the defendant, followed by manufacture of a closely similar device by the defendant, shifts to the defendant the burden of going forward with evidence to prove, if it can, that it arrived at the process by independent invention."); *Bolt Assocs., Inc. v. Alpine Geophysical Assocs., Inc.*, 365 F.2d 742, 749–50 (3d Cir. 1966) ("[H]eavy burden of persuasion rests upon one so charged to show that the production was the result of independent development and not from the use of information confidentially reposed."); *Hoeltke v. C.M. Kemp Mfg. Co.*, 80 F.2d 912, 928 (4th Cir. 1935), *opinion after grant of reh'g sub nom. William F. Hoeltke v. C. M. Kemp Mfg. Co.*, No. NO. 3815, 1936 WL 25411 (4th Cir. Jan. 10, 1936) ("One who invites the disclosure of an invention, and thereafter begins to manufacture articles embodying the principle of the disclosure, labors under a heavy burden when he seeks to justify his action on the ground of independent invention.").

While this matter does not involve trade secrets, it does involve confidential and proprietary information of great value to Renegade's business, like a trade secret. Defendant's assertion that she may have independently created the concepts and materials in the Thompson Program makes it Defendant's heavy burden to prove such independent creation, not Renegade's burden to offer a more definite statement. Defendant's Motion for a more definite statement

11

pursuant to Federal Rule of Civil Procedure 12(e) should be denied, and Defendant should offer

proof of her independent creation of the concepts and materials offered in the Thompson Program.

**IV.    If the Court requires Renegade to provide a more definite statement, Renegade moves the Court to permit leave to conduct preliminary discovery.**

Courts have permitted a plaintiff to conduct preliminary discovery when a plaintiff may

need to develop additional evidentiary support for its motion for preliminary injunction and to

permit the court to determine the appropriate scope of the requested preliminary injunction. *See*

*Bates v. Lundy Motors, LLC*, No. 3:16CV133 (HEH-RCY), 2016 WL 11670110, at *2 (E.D. Va.

Aug. 12, 2016) (noting that plaintiff may need preliminary discovery to offer complete evidence

and that defendants could not refuse to provide "preliminary discovery information" and fault

plaintiff for failing to provide evidence); *Chryso, Inc. v. Innovative Concrete Sols. of the*

*Carolinas, LLC*, No. 5:15-CV-115-BR, 2015 WL 12600175, at *1 (E.D.N.C. June 30, 2015)

(allowing preliminary discovery after allegations of misappropriation of confidential information).

Renegade attempted to obtain further information from Defendant regarding the Thompson

Program through numerous avenues prior to filing suit, but Defendant has refused to provide such

information. Renegade sent two different letters to Defendant requesting assurances that the

Thompson Program does not include the Renegade Proprietary Information. Defendant offered the

cursory statement that she has not breached the Agreements, *see* ECF No. 1 Ex. L, but has not

provided assurances or evidence regarding the subject matter of the Thompson Program. Renegade

also signed up for the Thompson Program and paid the fee to attend the Thompson Program, but

both registrations were cancelled. *See* Weber Aff. ¶¶ 9–14. Defendant cannot refuse to provide

evidence that she is not breach of the Agreements and also request a more definite statement.

The Federal Rules of Civil Procedure permit a party to seek discovery before the Rule 26(f)

conference "when authorized by these rules, by stipulation, or by court order." *Humphrey v. Sallie*

*Mae, Inc.*, No. 3:10-CV-01505-JFA, 2010 WL 2522743, at \*1 (D.S.C. June 17, 2010) (quoting

Fed. R. Civ. P. 26(d)(1)). Courts in the Fourth Circuit frequently grant motions for preliminary

discovery when the movant's request is reasonable or for good cause. *See Knight's Cos. v. Vant*

*Age Bens. Adm'rs, Inc.*, No. 2:18-cv-350, 2018 U.S. Dist. LEXIS 228456, at \*4 (D.S.C. Apr. 5,

2018) (granting motion for preliminary discovery when "Plaintiffs request is narrow in scope and

is made for the reasonable purpose of obtaining information"); *Humphrey*, No.: 3:10-cv-01505-

JFA, 2010 U.S. Dist. LEXIS 60176, \*1, 3–4 (granting motion to conduct preliminary discovery);

*see also Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2020 U.S. Dist. LEXIS

131980, at \*49–50 (M.D.N.C. July 27, 2020) (finding that "the purposes of the requested

discovery—to address contested issues, to ensure a complete record, and to assist in clarifying the

issues for factual resolution—weigh in favor of permitting limited discovery"). In fact, courts in

the Fourth Circuit often permit preliminary discovery when a party seeks preliminary injunctive

relief. *KBG Holding Corp. v. Union Bank*, 56 Fed. App'x. 111, 114 (4th Cir. 2003*); CIENA Corp.*

*v. Jarrard*, 203 F.3d 312, 315 (4th Cir. 2000); *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1220

(4th Cir. 1980); *Chryso, Inc.*, No. 5:15-CV-115-BR, 2015 WL 12600175, at \*3.

Factors considered under the reasonableness test include: "(1) whether a preliminary

injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the

expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how

far in advance of typical discovery process the request was made." *Humphrey*, No. 3:10-CV-

01505-JFA, 2010 WL 2522743, at \*1. Here, a preliminary injunction is pending, and the

information that would be sought would be specific and limited and relates to the information (i.e.,

materials, videos, presentations, etc.) being used by Defendant in the Thompson Program. The

purpose for requesting discovery is to gather additional evidentiary support of Defendant's use of

13

the Renegade Proprietary Information in the Thompson Program. The burden on Defendant should

be minimal, as Defendant should have the information related to the Thompson Program readily

available since the Defendant is currently offering the Thompson Program. Additionally,

Renegade's discovery request is made only slightly in advance of when the discovery period opens.

Furthermore, good cause exists for granting the motion because the preliminary discovery would

address contested issues, ensure a complete record, and to assist in clarifying the issues for factual

resolution with regard to the Thompson Program. As such, Renegade respectfully requests that the

Court grant motion for leave to conduct preliminary discovery prior to the Rule 26(f) conference.

Such preliminary discovery may even result in dismissal of this matter by Renegade if Defendant

is not in breach of her non-use and non-disclosure obligations pursuant to the Agreements.

**V.      Defendant expressly agreed to preliminary relief; and furthermore, the purpose of preliminary relief is the _possibility_ of permanent loss.**

As an initial matter, Defendant expressly acknowledged and agreed that

Renegade's remedies at law for any breach of this [confidentiality] provision [in either Agreement] would be inadequate and agrees that in the event of the Participant's breach of any provision of this paragraph, Renegade shall be entitled to appropriate equitable relief, including, but not limited to injunctive relief, which remedy shall be non-exclusive without the need to post any bond.

ECF No. 1 Exs. A ¶ 12, B ¶ 13. The Court should grant Renegade's request for preliminary relief.

Even without this contractual agreement, a plaintiff does not have to wait until the damage

is done in order to be successful on a motion for preliminary injunction and temporary restraining

order. The Fourth Circuit has held, "[W]hen the failure to grant preliminary relief *creates the*

*possibility* of permanent loss of customers to a competitor or the loss of goodwill, the irreparable

injury prong is satisfied." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating*

*Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (emphasis added). For example, in a case involving the

potential misuse of confidential information by a former business associate, the Fourth Circuit

14

stated that "a preliminary injunction is issued for the purpose of ***preventing actual or imminent***

***misuse*** of secret information" obtained through a confidential business relationship and is proper

to restrain "the actual or ***threatened misuse*** of any confidential information." *See Catalog Mktg.*

*Servs. v. Savitch*, Nos., 88-3538, 88-3539, 88-3657, 1989 U.S. App. LEXIS 22172, *9–10 (4th

Cir. Apr. 24, 1989) (emphasis added); *see also GlaxoSmithKline, LLC v. Brooks*, No. 8:22-CV-

00364-PWG, 2022 WL 2916170, at *11 (D. Md. Feb. 15, 2022) (finding TRO and preliminary

injunction necessary when use of information "could have a ***potentially devastating impact*** on

[plaintiff's] business in the hands of a competitor" (emphasis added)).

Defendant's disclosure of the Renegade Proprietary Information creates the possibility of

permanent loss to Renegade, and there needs not be more than the possibility of permanent loss.

Renegade's motion for temporary restraining order and preliminary injunction should be granted.

## CONCLUSION

For the foregoing reasons, Renegade respectfully requests that the Court deny Defendant's

Motion, and that the Court enter a TRO and preliminary injunction. In the alternative, Renegade

respectfully requests leave to conduct limited discovery prior to the Rule 26(f) conference.

Dated: October 10, 2022

**BURR & FORMAN LLP**

/s/ William Y. Klett, III
William Y. Klett, III, Esq.
Fed. Id. No. 5610
100 Calhoun Street, Suite 400
Charleston, South Carolina 29402
Ph: (843) 973-6805
Fax: (803) 933-1470
Email: wklett@burr.com

*Attorneys for Plaintiff Renegade*
*Acupuncturist Media, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2022, I electronically filed a redacted version of the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record. I served an unredacted copy on Defendant's counsel at his email of record (jmm@millinglaw.net).

Dated: October 10, 2022

BURR & FORMAN LLP

/s/ William Y. Klett, III
William Y. Klett, III, Esq.
Fed. Id. No. 5610
100 Calhoun Street, Suite 400
Charleston, South Carolina 29402
Ph: (843) 973-6805
Fax: (803) 933-1470
Email: wklett@burr.com

*Attorneys for Plaintiff Renegade Acupuncturist Media, LLC*