IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Renegade Acupuncturist Media, LLC, | ) | Case No.: 4:22-cv-3249-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Kimberly Thompson, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a breach of contract case arising out of a dispute involving a confidentiality and non-disclosure agreement. Before the Court are two motions (DE 5, DE 8), one filed by Plaintiff Renegade Acupuncturist Media, LLC ("Plaintiff" or "Renegade") and the other by Defendant Kimberly Thompson's ("Defendant" or "Thompson"). Renegade has filed a Motion for Temporary Restraining Order and Preliminary Injunction (DE 5), pursuant to Fed. R. Civ. P. 65 to enjoin Thompson from violating her obligations of confidentiality and non-disclosure to Renegade and from further misappropriation of Renegade's confidential and proprietary business information. Conversely, Thompson has filed a Motion to Dismiss (DE 8), pursuant to Rules 12(b)(1), 12(b)(6), or alternatively 12(e), Fed. R. Civ. P., challenging, among other things, Renegade's failure to identify any alleged "proprietary" or "confidential" information for which it claims protection. For the reasons set forth below, Defendant's Motion to Dismiss (DE 8) is denied, and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (DE 5) is denied.

## BACKGROUND

As alleged in Plaintiff's Complaint, Renegade is in the business of offering programming, seminars, and conferences to teach business management consulting, training, and advisory for

1

holistic health practices, including the acupuncture, chiropractic, alternative medicine, and massage industries. (DE 1, ¶ 10.) Specifically, Renegade offers the #SHIFT™ program ("#SHIFT"), which is a weekend-long intensive mentoring program that provides participants with Renegade's proprietary and confidential information, including coaching and training tools, techniques, know-how, methods, processes, strategies, and industry expertise developed by Renegade to help strengthen participants' holistic health practices (the "#SHIFT Proprietary Information"). (DE 1, ¶ 11.) The #SHIFT Proprietary Information is not protected by either patent law, trademark law, or any other traditional theory of exclusive rights. (DE 1, ¶ 13.) To safeguard Renegade's #SHIFT Proprietary Information and goodwill, which is crucial to Renegade's success, participants are required to sign a Seminar Participation Agreement (the "SP Agreement") and an Advanced Mentoring Program Agreement (the "AMP Agreement") (collectively, the "Agreements") as appropriate and agree to confidentiality provisions. (DE 1, ¶ 14.)

Defendant offers holistic health services through the entity doing business as Meridian Family Acupuncture located in Meridian, Idaho. (DE 1, ¶ 8.) Defendant has also offered services in conjunction with AcuGraph since at least as early as August 2021. (DE 1, ¶ 9.) As a condition of Defendant's participation in #SHIFT, Defendant was required to agree to the SP Agreement, including its confidentiality provisions which provide in pertinent part:

> Confidentiality. The Participant agrees to keep confidential all terms of this Agreement and any proprietary Renegade information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques (collectively the "Program Information"). The Participant agrees to use the Program Information solely for the purposes contemplated by this Agreement. The Participant agrees that all title to and ownership of Seminar Information shall at all times remain with Renegade. The Participant will use the Seminar Information in confidence, will not disclose any Seminar Information to any third parties, but will limit its disclosure to bona fide employees of the Participant on a need to know basis, which employees shall have confidentiality obligations to Member equal to or greater than those set forth in this Agreement.

(DE 1-1, p. 6, see also DE 1-2, p. 7.) Defendant executed the SP Agreement prior to beginning #SHIFT on August 28, 2021. (DE 1, ¶ 16.) As part of the SP Agreement, Defendant was also required to disclose "any associations, affiliations of Participant, personal or professional, that could be viewed as competitive entities, and/or may present a conflict for Participant . . . ." (Id. ¶ 8.) Defendant listed AcuGraph as a "competitive entit[y] and/or [entity that] may present a conflict." (Id. ¶ 24.) As an additional condition of Defendant's participation in #SHIFT, Defendant was required to complete a Pre-Seminar Questionnaire to safeguard Renegade's #SHIFT Proprietary Information and goodwill, which is crucial to Renegade's success. (DE 1, ¶ 26.) The Pre-Seminar Questionnaire requires #SHIFT participants to confirm that the participant "understand[s] [they] will be required to sign a non-disclosure that [they] may not teach / mentor / coach or otherwise disclose this proprietary material [they] learn this weekend to others."[1] (DE 1, ¶ 28.)

> As a testament to the techniques, methods, processes, etc. provided to participants as part of the #SHIFT Proprietary Information and the AMP Proprietary Information (collectively, the 'Renegade Proprietary Information'), Defendant offered public praise on social media of #SHIFT, AMP, and certain of Renegade's member-managers following her participation in #SHIFT and AMP. (Citation omitted). Defendant's posts recognize the increased monthly revenue of her business as the result of her participation in #SHIFT and AMP. The posts also state how happy she is that she went to #SHIFT and AMP, specifically noting: 'I did it wrong for 10 years DAMMIT . . . . I'm rectifying that problem now.'

(DE 1, ¶ 50.) On July 7, 2022, Defendant posted on the Meridian Family Acupuncture Facebook page that "she will be beginning a new teaching program so that she and her colleagues can share what they have learned with other doctors and practitioners . . . . We are rapidly growing her dream

---

[1] Renegade also offers AMP, which is a nine (9) month mentoring program that provides Renegade's proprietary and confidential information to participants, including coaching and training tools, techniques, know-how, methods, processes, strategies, and industry expertise developed by Renegade to help strengthen attendees' holistic health practices (the "AMP Proprietary Information"). (DE 1, ¶ 29.) Defendant also participated in this program and signed the AMP Agreement which also contained a confidentiality clause.

of becoming a 'teaching clinic' where she can offer hands-on mentorship. . . . She studies with the BEST, to become the BEST, so that she can offer the BEST care." (DE 1, ¶ 51.)

On July 26, 2022, Renegade sent a letter to Thompson reminding her of her confidentiality and nondisclosure obligations under the agreements. On or about August 20, 2022, Renegade discovered that Defendant had started offering an AcuGraph Accelerator Program with AcuGraph Acupuncture Technology. (DE 1, ¶ 56.) The program offered to teach other holistic health service providers how to "be a better acupuncturist," "build a bigger practice," "transform brand new patients into wellness patients," teach "the skillset to build a sustainable six-figure income," and "learn to think outside of the box." (Id.) Although Defendant claims she "has not breached any agreements" (DE 1, ¶ 65), Plaintiff contends "[i]t is not possible that Defendant can offer the Thompson Program without utilizing and misappropriating the Renegade Proprietary Information in violation of the non-disclosure provisions and confidentiality obligations of the Agreements." (DE 1, ¶ 68). To that end, Plaintiff filed this lawsuit on September 11, 2022, alleging four causes of action arising from the potential use of Renegade's "proprietary" and "confidential" information: (1) Breach of Contract, (2) Unfair Trade Practices, (3) Misappropriation, and (4) Unjust Enrichment. (DE 1.)

## LEGAL STANDARD

**Preliminary Injunction**

Under Rule 65(a), Fed. R. Civ. P., a court may issue a preliminary injunction. A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in [the] limited circumstances which clearly demand it." Direx Israel, Ltd. v. Breakthrough Med Corp., 952 F.2d 802, 811 (4th Cir. 1991) (internal quotation marks omitted) (citation omitted). The primary purpose behind the issuance of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to

render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). A party seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "To obtain a preliminary injunction under the Winter test, a movant must make a 'clear showing' of [the] four requirements." Alkebulanyahh v. Nettles, 2011 WL 2728453, at *3 (D.S.C. July 13, 2011); see also Dewhurst v. Century Aluminum Co., 649 F.3d 287, 290 (4th Cir. 2011) ("Winter thus requires that a party seeking a preliminary injunction ... must clearly show that it is likely to succeed on the merits.") (internal quotation marks omitted).

If a preliminary injunction motion is granted, the order granting it must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail-and not by referring to the complaint or any other document-the act or acts restrained or required." Fed. R. Civ. P. 65(d).

**Rule 12(b)(6)**

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id. To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

Although Renegade has filed a Motion for a TRO and Preliminary Injunction (DE 5), Thompson's motions to dismiss for lack of subject matter jurisdiction and failure to state a claim (DE 8) are dispositive motions, and therefore, they must be addressed before the Court can entertain Renegade's preliminary injunction. Accordingly, the Court will address Thompson's motion first.

**Defendant's Subject Matter Jurisdiction Motion**

At the Court's direction, Plaintiff filed a Supplemental Brief on Jurisdiction regarding the citizenship of Renegade Acupuncturist Media, LLC (DE 20). (DE 19, citing 28 U.S.C. 1332; Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F. 3d 114, 121 (4th Cir. 2004) (holding that "[a limited liability company] is an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members.")). The members of Renegade are Will Zuhira (also known as Wil Sierra), a citizen of Peru, Illinois, or Bowie, Maryland ("Zuhira"); Tonya Weber, a

citizen of North Myrtle Beach, South Carolina ("Weber"); and Min Jeon, a citizen of Burlington, Massachusetts ("Jeon"). Defendant Thompson is a citizen and resident of Meridian, Idaho. Accordingly, diversity of citizenship is met.

Nevertheless, Thompson has equally challenged whether Renegade has met the jurisdictional $75,000 amount in its motion to dismiss (DE 8). See 28 U.S.C. § 1332(a) (Subject matter jurisdiction in diversity requires "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs . . . ."). "Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith." Wiggins v. N. Am. Equitable Life Assur. Co., 644 F.2d 1014, 1016 (4th Cir. 1981). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d at 768. Here, on the face of Plaintiff's Complaint, Renegade alleges, "Renegade has been and will continue to be injured in an amount exceeding $75,000, to be proved at trial." (DE 1, ¶ 3.)

In support of this claim, Renegade alleges in its Complaint that Thompson offered the AcuGraph Accelerator Program to 12 practitioners at $2,995–$3,995 per person and six

practitioners to participate in the AcuGraph Accelerator Program and Three-Day Intensive at $4,995–$6,990 per person. (DE 1, ¶¶ 59, 61, DE 1-9, pp. 4, 26.) In sum, the lost profits incurred from the Thompson Program are $89,880 if Defendant sold all available spots at the highest price, and therefore, the amount in controversy plausibly exceeds $75,000. Accordingly, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is denied.

**Defendant's 12(b)(6) Motion**

Next, as to Thompson's 12(b)(6) motion, Plaintiff's Complaint alleges four causes of action arising from the potential use of Renegade's "proprietary" and "confidential" information: (1) Breach of Contract, (2) Unfair Trade Practices, (3) Misappropriation, and (4) Unjust Enrichment. Thompson does not challenge whether Renegade can meet the elements of each cause of action; rather, Thompson contends Renegade has failed to "identify what might be 'proprietary' or 'confidential' that Thompson might be using" and that Renegade's assertion that Thompson's program "will" include "proprietary" information (DE 1, ¶¶ 62, 66) which Thompson denied in response to Renegade, which she believes is fatal to the sufficiency of Renegade's Complaint. This Court disagrees. Plaintiff alleges in its Complaint that

> Renegade is in the business of offering programming, seminars, and conferences to teach business management consulting, training, and advisory for the holistic health practices, including the acupuncture, chiropractic, alternative medicine, and massage industries. . . . Specifically, Renegade offers #SHIFT, which is a weekend-long intensive mentoring program that provides to participants Renegade's proprietary and confidential information, including coaching and training tools, techniques, know-how, methods, processes, strategies, and industry expertise developed by Renegade to help strengthen participants' holistic health practices (the "#SHIFT Proprietary Information").

(DE 1, ¶¶ 10, 11.) Thompson signed a Seminar Participation Agreement and an Advanced Mentoring Program Agreement. Both agreements contain substantially similar confidentiality clauses. The Seminar Participation Agreement provides in pertinent part:

8

> Confidentiality. The Participant agrees to keep confidential all terms of this Agreement and any proprietary Renegade information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques (collectively the "Program Information"). The Participant agrees to use the Program Information solely for the purposes contemplated by this Agreement. The Participant agrees that all title to and ownership of Seminar Information shall at all times remain with Renegade. The Participant will use the Seminar Information in confidence, will not disclose any Seminar Information to any third parties, but will limit its disclosure to bona fide employees of the Participant on a need to know basis, which employees shall have confidentiality obligations to Member equal to or greater than those set forth in this Agreement.

(DE 1-1, p. 6, see also DE 1-2, p. 7.) "Seminar Information is defined as 'all terms of this Agreement and any proprietary Renegade information provided or developed by Renegade, including, without limitation, all information relating to written materials and techniques.'" (DE 1, ¶ 19.) Furthermore, "[t]he Pre-Seminar Questionnaire requires #SHIFT participants to confirm that the participant "understand[s] [they] will be required to sign a non-disclosure that [they] may not teach / mentor / coach or otherwise disclose this proprietary material [they] learn this weekend to others." (DE 1, ¶ 28.) At the 12(b)(6) stage, this Court is required to accept Renegade's factual allegations as true and to view the Complaint in a light most favorable to Plaintiff; accordingly, Plaintiff has sufficiently identified the "proprietary" or "confidential" information that Thompson might be using. Furthermore, the fact that Thompson denies any wrongdoing, which Renegade indicates in its Complaint, does not negate the Complaint's sufficiency. Rather, it is proof that an actual case or controversy exists. Therefore, Defendant's Motion to Dismiss is denied.[2]

**Plaintiff's Motion for Preliminary Injunction**

Turning to Renegade's Motion for Temporary Restraining Order and Preliminary Injunction (DE 5), Renegade seeks a preliminary injunction on all four of its causes of action in the Complaint (i.e., Breach of Contract, Unfair Trade Practices, Misappropriation, and Unjust

---

[2] For the same reasons provided herein the Court denies Defendant's Motion for a More Definite Statement.

Enrichment) to preclude Thompson from disclosing Renegade's proprietary information pursuant to a confidentiality clause in the Agreements. However, the Court denies this relief solely based on Plaintiff's failure to establish it is likely to suffer irreparable harm in the absence of preliminary relief.

Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994) "However, when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552. Renegade has presented an Affidavit of Tonya Weber ("Weber"), a member of Renegade, who states in her affidavit, among other things, that Thompson disclosed her association with AcuGraph and Miridia and that she gave assurances that she would not teach what she learned from Renegade to AcuGraph.[3] (DE 13-1.) Furthermore, Renegade cites to both agreements signed by Thompson that "Renegade's remedies at law for any breach of this provision would be inadequate and agrees that in the event of the [Defendant's] breach of any provision of this paragraph, Renegade shall be entitled to appropriate equitable relief, including, but not limited to injunctive relief, which remedy shall be non-exclusive without the need to post any bond." (DE 1-1, p. 6, see also DE 1-2, p. 7.) As such, Renegade argues Defendant agreed to the granting of injunctive relief in the event of a breach of the confidentiality and non-use obligations in the Agreements. While Thompson has not challenged whether Renegade has an adequate remedy at law, equally, Renegade has not offered any evidence that creates the possibility

---

[3] The Court notes that this affidavit is presented in opposition to Defendant's motion to dismiss and not in support of Plaintiff's motion for preliminary injunction.

of permanent loss of goodwill or customers.[4] Without a clear showing of the same, this Court cannot find that Renegade is likely to suffer irreparable harm. Therefore, the Court denies Plaintiff's Motion for Preliminary Injunction without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (DE 8) is denied, and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (DE 5) is denied.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
April 6, 2023

---

[4] While Plaintiff's Complaint alleges a loss to its reputation, goodwill, and clients, these allegations *alone* are insufficient to meet Plaintiff's burden for a preliminary injunction. A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in [the] limited circumstances which clearly demand it." Direx Israel, Ltd. v. Breakthrough Med Corp., 952 F.2d 802, 811 (4th Cir. 1991).